```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                   FORT MYERS DIVISION

RICHARD A. DOUCETTE,

       Petitioner,

v.                                Case No: 2:18-cv-335-JES-NPM

SECRETARY, DOC,

       Respondent.
                                  /
```

**OPINION AND ORDER**

Before the Court is Petitioner Richard A. Doucette's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. #1). Doucette challenges his 2011 conviction for Lewd or Lascivious Molestation, for which he received a 25-year prison sentence. He raises five grounds of ineffective assistance of counsel.

**I.  Background**

On December 16, 2010, the State of Florida charged Doucette with intentionally touching in a lewd or lascivious manner the vagina area of K.S., a person less than 12 years of age. (Doc. #11-2 at 21). Public Defender Shakia Burnam initially represented Doucette, but she was replaced by Regine Emile in January 2011. (Id. at 556-7).

Before trial, the State filed two motions in limine, seeking

to introduce hearsay statements made by the alleged victim. The first addressed statements K.S. made to four witnesses—her parents and two employees of the Children's Advocacy Center. (Id. at 72). In the statements, K.S. described Doucette interlacing his hand with her hand and rubbing her vagina under her clothes while they were sitting on a couch. (Id. at 258, 275, 299-300, and 319-321). The court held a hearing, and Emile objected to the statements as overly prejudicial and cumulative. (Id. at 327). The court found the statements admissible and reserved for trial "[t]he issue as to whether they are cumulative in nature." (Id. at 118). The State's second motion addressed statements K.S. made to a friend named Ella. (Id. at 120). The record does not include a written order deciding the motion, but the court's Motion Minutes shows it held a hearing and deemed the statements admissible. (Id. at 125).

The Public Defender's Office reassigned Doucette's case again, and on August 26, 2011, Tiffany Chewning entered a notice of appearance. (Id. at 119). Another Public Defender, Penelope Michalakis, assisted at trial. (*See* Doc. #1-3 at 5).

Trial commenced in December 2011. The prosecution presented testimony from K.S. describing the alleged crime. K.S.'s father and her friend Ella testified about their observations of K.S. and

hearsay statements she made to them.  K.S.'s mother and her friend Jayda testified about their observations of the evening in question, but they did not give hearsay statements.  The State also played a video of K.S.'s interview conducted at the Children's Advocacy Center.  Doucette testified in his own defense but called no other witnesses.

   The witnesses all agreed on some facts.  In April 2010, Doucette's two daughters were at K.S.'s house to celebrate her tenth birthday.  When Doucette arrived to pick up his daughters, they wanted to stay.  K.S.'s parents planned to attend a barbeque and leave their older daughters to watch over K.S. and her friends.  Doucette offered to stay and supervise the girls, and K.S.'s parents agreed.  Doucette retrieved his son from a nearby friend's house where he had slept over the night before and returned to K.S.'s house, and K.S.'s parents left.  The children gathered in the living room to watch a movie, and Doucette sat on couch between K.S. and one of his daughters.

   This is where the stories diverge.  The state contended that Doucette touched K.S. in the manner described in her hearsay statements, summarized above.  K.S. then got up from the couch, went into the bathroom to get away from Doucette, and told Ella that Doucette had touched her.  K.S. eventually returned to the

3

living room to finish watching the movie, and Doucette went outside to smoke a cigarette. For his part, Doucette denied touching K.S. during the movie and testified that she remained on the couch, except for a break when the girls paused the movie to eat pizza. The girls eventually fell asleep. When K.S.'s parents got home, Doucette woke his children and left. The next day, encouraged by Ella, K.S. told her parents that Doucette touched her the night before.

The jury returned a guilty verdict. (Doc. #11-2 at 13). The Second District Court of Appeal of Florida (2nd DCA) affirmed without a written opinion. (Doc. #21-6 at 464). Doucette filed a postconviction motion under Florida Rule of Criminal Procedure 3.850. (Doc. #11-4 at 31). The postconviction court summarily denied some grounds and ordered an evidentiary hearing on the rest. (Doc. #11-5 at 66). After the hearing, the postconviction court denied the remaining grounds. (Doc. #11-6 at 39). The 2nd DCA affirmed without a written opinion. (Doc. #11-6 at 464). Doucette's Habeas Petition followed. Respondent concedes Doucette timely filed the Petition and exhausted his state remedies. (Doc. #10).

## II. Applicable Habeas Law

### a. AEDPA

4

The Antiterrorism Effective Death Penalty Act (AEDPA) governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 134 S. Ct. 1697, 1702 (2014). A state court's violation of state law is not enough to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. White, 134 S. Ct. at 1702; Casey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1). A decision is "contrary to"

clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). "[T]his standard is difficult to meet because it was meant to be." Sexton v. Beaudreaux, 138 S. Ct. 2555, 2558 (2018).

6

Finally, when reviewing a claim under 28 U.S.C. § 2254(d), a federal court must remember that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Burt v. Titlow, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

### b. Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person may have relief for ineffective assistance of counsel. 466 U.S. 668, 687-88 (1984). A petitioner must establish: (1) counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. Id.

When considering the first prong, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Sealey v. Warden, 954 F.3d 1338, 1354 (11th Cir. 2020) (quoting Strickland, 466 U.S. at 689). And "[a] state court's determination that a claim lacks

merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Franks v. GDCP Warden, 975 F.3d 1165, 1176 (11th Cir. 2020) (quoting Harrington, 562 U.S. at 101). Thus, a habeas petitioner must "show that no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." Id.

The second prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Sealey at 1355 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

"An ineffective-assistance claim can be decided on either the deficiency or prejudice prong." Id. And "[w]hile the Strickland standard is itself hard to meet, 'establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.'" Id. (quoting Harrington, 562 U.S. at 105 (2011)). The critical question is not whether this Court can see a substantial likelihood of a different result had defense counsel taken a different approach. Mays v. Hines, --- S. Ct. ---, 2021 WL 1163729, at *7 (Mar. 29, 2021). All that matters is whether

8

the state court, "notwithstanding its substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree."  Id. (quoting Knowles v. Mirazayance, 556 U.S. 111, 123 (2009)).

### III. Analysis

#### a. Ground 1: Counsel failed to object to child hearsay statements

Doucette argues his trial counsel should have objected to the child hearsay statements at trial as unreliable due to inconsistencies and because K.S. could not remember some details.[1] (Doc. #2 at 17).  The postconviction court found this claim "conclusively refuted by the record" for the following reasons:

> 20…Defendant's trial counsel did, in fact, argue against the admission of the statements at the child hearsay hearing conducted prior to trial.  Following the hearing, the trial court found that the victim's statements were reliable and therefore admissible.  Defendant has failed to demonstrate why renewing the objection at trial would have lead [sic] the trial court to come to a different conclusion and find the statements inadmissible…

---

[1] Doucette also argues the trial court erred by admitting the hearsay statements made to Ella without a written order in violation of Fla. Stat. § 90.803(23)(c), which governs child hearsay statements.  Errors of state law are not cognizable on federal habeas review.  And anyhow, the statute does not require a written order.

9

> 21. Additionally, testimony at the evidentiary hearing confirmed that counsel did not object on the basis of trial strategy. Defense counsel's strategy at trial was to heavily emphasize the inconsistencies between the victim's prior statements and her trial testimony. She emphasized these inconsistencies in closing argument as a basis to conclude the victim was not credible and acquit Defendant. Had defense counsel objected to the hearsay statements, she could not have pursued her chosen strategy of arguing that the incident did not happen because the victim's story was inconsistent. It was within defense counsel's professional discretion to pursue the strategy she felt had the greatest chance of prevailing. Defendant has failed to demonstrate that counsel's tactical decision was so outside the broad range of reasonable, effective assistance of counsel that it amounted to error under *Strickland*.

(Doc. #11-6 at 46-47).

Doucette has not demonstrated that the postconviction court's denial was based on an incorrect application of federal law or unreasonable findings of fact. First, the postconviction court's finding that Chewning did not renew objections to child hearsay at trial for strategic reasons is presumed correct. See Franks v. GDCP Warden, 975 F.3d 1165, 1176 (11th Cir. 2020). Second, a petitioner is not entitled to habeas relief "[i]f fairminded jurists could disagree as to whether trial counsel's strategic choices were reasonable." Id. After the trial court found the child hearsay statements admissible, Chewning decided to use those statements to attack the alleged victim's credibility instead of renewing an objection the court already rejected. Doucette has

10

not shown that no reasonable jurist would make this tactical decision. Ground 1 is denied.

> b. **Ground 2: Counsel failed to properly investigate and prepare for trial**

Doucette asserts that Chewning did so little preparation that she was unable to adequately represent him at trial. He points to statements Chewning made months before trial that she had not yet reviewed the file. And when the court called the case for trial on November 1, 2011, Chewning admitted she was unprepared and requested a continuance. (Doc. #11-2 at 359). The court granted the request and set the trial for December 6, 2011. Doucette does not produce any evidence that Chewning was not ready for trial on December 6. Instead, he infers she was unprepared based on her performance. (*See* Doc. #2 at 17 ("Counsel proceeded through the trial without a coherent theory on the case seeking only to attack the state witnesses on cross-examination without having any idea what the witness's response would be.")).

The postconviction court summarily denied this ground. After noting Chewning's early statements about her unpreparedness, it found:

> 37. When the case was called for trial on December 6, 2011, months after the continuance and Nelson hearing, defense counsel announced the case was ready for trial. The statements that Defendant points to as indicating that her [sic] counsel was not ready for trial on

11

> December 6, 2011 occurred months prior and he has not made any further allegations as to why she was not actually ready for trial, despite indicating that she was. This claim is conclusory, inherently incredible and unsupported by the record.
>
> 38. Moreover, Defendant does not and cannot explain how he was prejudiced by his counsel being unprepared for trial months before trial was conducted. Indeed, by requesting a continuance and setting Defendant's Nelson motion for hearing, counsel was acting within professional standards.

(Doc. #21-5 at 77).

The state court's ruling is not contrary to federal constitutional law. Doucette has not established either Strickland prong. Chewning's claims of unpreparedness weeks and months before trial do not show that she was unprepared when trial began. Nor does the record of her performance at trial. Chewning and Michalakis ably cross-examined the prosecution's witnesses and identified many inconsistencies in the State's case during closing argument. They capably executed a reasonable trial strategy. Ground 2 is denied.

### c. Ground 3: Counsel failed to investigate, question, and call witnesses

Doucette argues Chewning should have called as defense witnesses his three children (Ashley, Heather, and Ducky), K.S.'s friend Audrey, and K.S.'s sister's boyfriend Dalton, who was in and out of the house on the night in question. Doucette claims

12

the testimony of these witnesses would have offset the testimony of the prosecution witnesses.

The postconviction court summarily denied this ground as it relates to Dalton because he was not present when the molestation allegedly occurred and "did not see anything relevant or significant." (Doc. #21-5 at 74). This finding is presumed correct, and Doucette does not refute it. The court denied the rest of this ground after an evidentiary hearing. None of the witnesses appeared at the hearing, but Doucette testified that they could have contradicted K.S.'s testimony.

Chewning testified that she made a strategic decision not call Doucette's children for several reasons. First, she was suspicious that the children were being coached and worried they would give perjured testimony. (Doc. #21-6 at 41). Her suspicion was partly based on an email obtained through discovery suggesting that Doucette's mother was coaching one of the daughters. (*See* Id. at 49). Second, the children's statements were inconsistent with their own prior statements and each other's statements. (Id.). Third, Chewning worried that calling Doucette's children to testify in his defense against a serious child sex crime allegation would create the impression Doucette was using his children. (Id. at 41-42). Fourth, Chewning "did not need the children's

testimony to pursue her chosen defense strategy, which was to emphasize the inconsistencies of the victim's prior statements and testimony." (Id. at 42).

As for Audrey, Chewning chose not to depose her because an initial investigation indicated she did not see anything relevant to the case. (Id. at 46). Doucette did not offer any evidence to the contrary. (Id.).

The postconviction court found that Doucette failed to prove that Chewning's tactical decision not to call the witnesses "was so outside the reasonable norms of professional conduct that no reasonable attorney would have made the same decision." (Id. at 42). Doucette argues the postconviction court relied on an unreasonable determination of the facts. This Court disagrees. The postconviction court's findings are supported by Chewning's unrebutted testimony at the evidentiary hearing. Doucette has not established that no reasonable jurist would deny him relief under Strickland. Ground 3 is denied.

> d. **Ground 4: Counsel failed to object to irrelevant testimony and prosecutorial misconduct**

At trial, K.S.'s mother testified that she spoke to Doucette in her kitchen after returning home the night of the alleged crime and saw "ten empty beer bottles sitting in front of him, and I know we had not drank them." (Doc. #11-3 at 156). The prosecutor

mentioned the beer bottles in closing argument: "Mr. Doucette made a mistake. Once he realized he made that mistake of touching that little girl, he stood up, went outside and had a cigarette. Sat at the bar and drank beer for the rest of the night." (Id. at 287). On cross-examination, Doucette acknowledged he drank beer while watching the kids but denied drinking ten. (Id. at 269).

Doucette argues his counsel should have objected to the testimony and the prosecutor's statement. The postconviction court summarily denied this ground:

> 40. The Court finds that the testimony was not irrelevant, and even if it were, Defendant was not prejudiced by his attorney's failure to object to it. First, the testimony is not irrelevant because it provided context for the events at the victim's home and what happened when the victim's parents returned home. The State argued that Defendant's excessive alcohol consumption signaled that he was nervous and worried after the victim resisted being fondled. Second, Defendant was not prejudiced by this testimony, even if it were irrelevant. As Defendant states in his own motion, this testimony had no bearing on the elements of the crime, which were otherwise supported by other testimony at trial. Any prejudice resulting from this testimony simply does not rise to the level necessary to support a Strickland claim. Defendant has failed to demonstrate how or why the testimony about the ten beer bottles was "unfairly" prejudicial such that it tainted the jury to such a degree that they convicted him.

(Doc. #11-5 at 78).

To prevail on this ground, Doucette must demonstrate that no reasonable jurist would find the testimony and argument about the

15

beer bottles admissible. He has not done so. The postconviction court's ruling that the evidence was relevant is reasonable. See United States v. Lopez, 649 F.3d 1222, 1247-48 (11th Cir. 2011) (finding testimony that provides context to an alleged crime relevant). The court's ruling that Doucette was not unfairly prejudiced is also reasonable. The State's case rested overwhelmingly on the testimony of the victim and her family and friends. Exclusion of the testimony and argument regarding empty beer bottles would not likely have changed the outcome. Ground 4 is denied.

### e. Ground 5: Cumulative effect of counsel's errors

Finally, Doucette argues that even if no single ground warrants habeas relief, the cumulative effect does. After the evidentiary hearing, the postconviction court denied this ground: "Defendant's preceding nine claims are denied and most were denied on the basis that no error was committed by counsel. Defendant has failed to prove cumulative error entitling him to relief under *Strickland*[.]" (Doc. #21-6 at 47).

"The cumulative error doctrine provides that an aggravation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for

16

reversal." Morris v. Sec'y, Dep't of Corrs., 677 F.3d 1117, 1132 (11th Cir. 2012) (quoting United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005)). Courts "address claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that we find in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." Id.

Doucette's cumulative error claim fails. None of his individual claims of error have merit, so the Court has nothing to accumulate. Ground 5 is denied.

### IV.  Certificate of Appealability

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or

that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (citations omitted). Doucette has not made the requisite showing here and may not have a certificate of appealability on any ground of his Petition.

Accordingly, it is now

**ORDERED:**

1. Petitioner Richard A. Doucette's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. #1) is **DENIED**.

2. The Clerk is **DIRECTED** to enter judgment, terminate all deadlines and motions, and close the file.

**DONE AND ORDERED** in Fort Myers, Florida on April 2, 2021.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record

18